UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMANDA REYNOLDS *individually and on behalf of all others similarly situated*,

                      Plaintiff,

      -against-

MERCY INVESTMENT SERVICES, INC. *et al*,

                      Defendants.
------------------------------------------------------------------X

**ORDER**

24-CV-0362 (NJC) (JMW)

**A P P E A R A N C E S:**

Amanda S Reynolds
**Amanda S. Reynolds, Esq.**
3 Harvard Drive
Woodbury, NY 11797
*Pro Se Plaintiff*

Joshua I. Sherman, Esq.
**Calcagni & Kanefsky, LLP**
1085 Raymond Blvd, 14th Floor
Newark, NJ 07102
*Attorney for Movant and Non-Party Allen J. Underwood*

**WICKS,** Magistrate Judge:

        Plaintiff, Amanda Reynolds, commenced this class action lawsuit seeking relief against Defendants Mercy Investment Services, Inc. ("MIS"); Mercy Education System of the Americas ("MESA"); Sisters of Mercy of the Americas Mid-Atlantic Community, Inc.; Our Lady of Mercy Academy, Corp. ("OLMA"); Sister Lisa Griffith (Executive Director of MESA); Margaret Myhan (President of OLMA); and Patricia Dilollo (OLMA Director of Advancement) (collectively the "Defendants").  She alleges several causes of action including: (1) fraud, (2) breach of fiduciary duty, (3) breach of contract, (4) unjust enrichment, and (5) vicarious liability.

1

On January 23, 2024, Plaintiff voluntarily dismissed the case (ECF No. 14; *see also* Electronic Order entered 01/23/2024). No appearances were filed by any Defendant. However, non-parties surfaced, namely, Allen J. Underwood and Karen Underwood, who filed a motion to seal (1) Plaintiff's Supplemental Affirmation that was filed in connection with Plaintiff's order to show cause filed at ECF No. 7 as well as the (2) motion to seal itself and accompanying papers (ECF No. 15). For the reasons that follow, the motion to seal (ECF No. 15) is granted.

## **BACKGROUND**

Plaintiff is an alumna from OLMA's class of 2001. (ECF No. 1 ¶ 64.) This action, styled as a class action, purported to consist of OLMA students, parents, alumnae, donors, and other stakeholders in Catholic Sisters of Mercy schools that were forced to shut their doors by Defendants. (*Id.* ¶ 14.) MIS, Sisters of Mercy of the Americas Mid-Atlantic Community, Inc., and OLMA are all not-for-profit corporations and MESA is "a sponsored ministry of the Institute of the Sisters of Mercy of the Americas." (*Id.* ¶¶ 67-68, 72, 74.)

Plaintiff alleges that on January 8, 2024, the Board of Administration of OLMA announced that it would be closing in June 2024. (*Id.* ¶ 25.) Defendants cited "changing demographics and lower enrollment" in the past decade as reasons for its closure. (*Id.* ¶ 26.) Stakeholders made significant efforts to prevent the closure by obtaining signatures for petitions and holding meetings to, *inter alia,* identify fundraising activities to put the school back in good financial standing. (*Id.* ¶ 28.) However, MESA stated that the decision to close was final. (*Id.* ¶ 29.)

Plaintiff claims that MESA knew of the school's impending demise as early as 2018 but only recently announced the closure. (*Id.* ¶ 55.) She states that Defendants "continued to collect donations" despite knowing about the school's state. (*Id.* ¶ 60.) Indeed, during a Zoom meeting

2

with the anticipated class of Plaintiffs, DiLollo, OLMA's Director of Advancement, admitted that executives did not tell alumnae about the situation "because it would have impacted [the school's] enrollment." (*Id.* ¶ 62.)  Defendants also emphasized that the property was not going to be sold or repurposed, but Plaintiff suspects otherwise, and believes it is currently postured for sale.  (ECF No. 6 ¶ 16.)

On January 18, 2024, Plaintiff filed this Complaint alleging that (1) Defendants committed fraud in representing that the tuition monies and donations would be "used in accordance with Plaintiffs' intentions" and used to maintain OLMA but they were not used for such purposes (ECF No. 1 at 45-46); (2) Defendants breached their fiduciary duties owed to Plaintiff when they acted in their own interests and not the school's (*id.* at 47); (3) Defendants breached the contract with the Plaintiff when Defendants misappropriated monies provided by the anticipated class (*id.* at 48); (4) Defendants were unjustly enriched as a result of receiving these monies and the class detrimentally relied on Defendants' promise to use the money to benefit OLMA (*id.* at 49-50); and (5) all Defendants are liable for their employees', agents', or subsidiaries' actions (*id.* at 51).

Plaintiff filed a motion to proceed *in forma pauperis*.  (ECF No. 2.)  She also filed an order to show cause seeking a temporary restraining order ("TRO"), injunctive relief and an attachment in which she requested that the Court order Defendants to refrain from engaging in the conduct alleged in the Complaint—that is, closing the school would cause immediate, irreparable harm.  (ECF No. 6.)  In connection with that motion, Plaintiff also filed a "Supplemental Affirmation"[1] purportedly in support of her motion for a TRO (ECF No. 7).  In it,

---

[1] An "affirmation," although akin to an affidavit or declaration, is generally used in state court. *See* N.Y. CPLR 2106.  An "[a]ffirmation is simply a solemn undertaking to tell the truth."  Notes of Advisory Committee on Fed. R. Evid. 603.  CPLR 2106 was recently amended January 1, 2024, makes clear that an affirmation "may be used in an action in New York in lieu of and with the same force

3

Plaintiff mounts a blunderbuss approach on the non-parties of what could be perceived as nothing short of a scurrilous attack. *Id.* It is that filing that forms the basis of the instant application.

The Hon. Nusrat J. Choudhury preliminarily reviewed the motion for a TRO but denied Plaintiff's application to proceed *in forma pauperis* on two occasions (ECF No. 10; Electronic Order dated Jan. 22, 2024).[2] Shortly thereafter, Plaintiff filed a stipulation of dismissal (ECF No. 14)[3] stating that:

> PLEASE TAKE NOTICE, that PLAINTIFF, AMANDA REYNOLDS, individually and on behalf of all others similarly situated, hereby discontinues the action against Defendants. Since filing the action, my email, phone, internet and bank account have been hacked into and a request has been made for me to withdraw the action. I fear for the safety of my family and for myself. I am, therefore, discontinuing the action before this Honorable Court.

(ECF No. 14.)

The case was thereafter closed. (*See* Electronic Order entered 01/23/2024.) The Underwoods then filed the instant motion to seal the "Supplement to Attorney Affirmation" filed at ECF No. 7 and their motion itself, arguing that the filing at ECF No. 7 is essentially patently false and harmful. (ECF No. 15.) They argue that the Supplemental Affirmation is not a "judicial document" thus the presumption of access does not arise. However, even if it were a "judicial document," they argue that there is a strong privacy interest warranting sealing of the document. (*Id.*)

---

and effect as an affidavit." However, the rule mandates that the affirmation must "be in substantially" the form set forth in the rule itself, which the filing at ECF No. 6 is not.

[2] In addition, upon review of the Complaint, the Court *sua sponte* raised a question of whether federal subject matter jurisdiction even existed (Electronic Order entered Jan. 19, 2024).

[3] In fact, the document is a "Notice" rather than "Stipulation," since Plaintiff voluntarily dismissed the action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) before issue had been joined.

4

Plaintiff opposes, stating that the application "should be denied on logic alone" and that the test for determining whether the document is a judicial document is inapplicable (ECF No. 16). The opposition cites no legal support or authority.

## LEGAL STANDARD

The public right of access is long embedded in the DNA of our Country's history. Indeed, that concept existed well before the right appeared in our Constitution. "Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution. That right includes 'a general right to inspect and copy' such judicial documents." *Mirlis v. Greer,* 952 F.3d 51, 58-59 (2d Cir. 2020) (internal citations omitted).

It is by now axiomatic that there is a presumption of public access to judicial documents and records. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2015); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). However, "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications,* 435 U.S. 589, 598 (1978). Whether right of access to court proceedings and records is overcome, "depends on the nature of the proceeding, not on the personal characteristics of the litigant." *Hartford Courant Co., LLC v. Carroll,* 986 F.3d 211, 219 (2d Cir. 2021).

The Second Circuit has adopted a three-part analysis to provide guidance to the district courts when determining whether documents filed in a case can and should be placed under seal. *See Lugosch*, 435 F.3d at 119–20; *see also King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT), 2010 WL 3924689, at *4 (E.D.N.Y. Sept. 28, 2010). *First*, the court "must determine whether documents are judicial documents that are relevant to the performance of the judicial

5

function and useful in the judicial process." *Saadeh v. Kagan*, No. 20-CV-1945 (PAE) (SN), 2021 WL 965334, at *2 (S.D.N.Y. Mar. 15, 2021) (internal quotation and citations omitted). *Second,* the Court must weigh the common law and constitutional presumption of access attached to the documents in question. *See Saadeh*, 2021 WL 965334 at *2 (citing *Lugosch*, 435 F.3d. at 119–120). And *third*, the Court must use its discretion to determine "whether there are any countervailing concerns that would weigh against full public access to the documents." *See Saadeh*, 2021 WL 965334 at *2 (citing *Lugosch*, 435 F.3d. at 120).

Judicial documents that are tantamount to performance of Article III functions likely carry a strong presumption of access whereas documents that are insignificant in helping a court reach an adjudicative decision demonstrate a low presumption of access. *See United States v. Amodeo*, 71 F.3d 1044, 1049–50 (2d Cir. 1995). A complaint is an obvious example of a judicial document to which a strong presumption of access attaches because it assists the Court's exercise of Article III functions. *See Bernstein*, 814 F.3d at 140-41 (holding that a complaint should be afforded a presumption of accessibility despite the action's settlement on confidential terms).

The moving party seeking to seal bears the burden of showing that higher values outweigh the presumption of public access. *See Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017). "Privacy interests" *may*, under certain circumstances satisfy that higher burden. The Second Circuit articulated three factors that the courts must consider in making a sealing determination based on privacy interests. *Amodeo,* 71 44 F.3d at 1051. First, "courts should consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* Next, courts should consider "[t]he nature and degree of injury. . . . This will entail consideration not only of the sensitivity of the information and the subject but also of how

the person seeking access intends to use the information." *Id.* Lastly, courts should consider the reliability of the information and err on the side of non-disclosure of unverified information. *Id.*

Conclusory assertions are simply not enough to overcome the First Amendment right of access. *In Re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). Otherwise, every articulable privacy concern could and would be advanced in a generalized way to seal civil case dockets. "A possibility of future adverse impact on employment . . . is not a 'higher value' sufficient to overcome the presumption of access to judicial documents." *See Under Seal*, 273 F. Supp. 3d at 470 (quoting *Lugosch*, 435 F.3d at 120). A party's "[g]eneralized concern[s] of adverse publicity" and damage to reputation do not warrant sealing. *Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21-CV-1732 (AT) (BCM), 2021 WL 2850632, at *3 (S.D.N.Y. July 8, 2021) (alterations in original) (quoting *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018)).

It is against this legal framework that the Court analyzes the instant application.

## **DISCUSSION**

At the outset, the Court notes that the non-parties have standing to bring this motion. Notwithstanding their status as non-parties to the action, courts in this Circuit have routinely allowed non-parties to file such motions seeking similar relief and apply the *Lugosch* test in analyzing the merits of the motion to seal. *See GlobalFoundries U.S. Inc. v. IBM*, No. 23-cv-3348 (KMK) (AEK), 2023 U.S. Dist. LEXIS 207596 (S.D.N.Y. Nov. 20, 2023); *SEC v. Ripple Labs, Inc.*, 2023 U.S. Dist. LEXIS 85787, at *26 (S.D.N.Y. May 16, 2023). Having determined standing, the Court applies the *Lugosch* test here.

### A. Is the Filing a "Judicial Document"?

The threshold question is whether the Supplemental Affirmation is a "judicial document." Here, the document was submitted in connection with Plaintiff's motion for a TRO. (ECF No. 7.) Notwithstanding the non-parties' assertion that the document is not a judicial one in part because of the case's dismissal, the Court finds to the contrary. Sworn statements such as affidavits, affirmations or declarations submitted in support of an application for relief are considered judicial documents if it would influence the court's ruling on the underlying motion. *See United States v. Correia,* No. 19-CR-725-3 (JPO), 2020 U.S. Dist. LEXIS 211688, at *2 (S.D.N.Y. Nov. 12, 2020) (considering declaration submitted with a motion to withdraw as counsel and applying *Lugosch* factors); *see also United States v. Chandler*, 220 F. Supp. 2d 165, 169 (E.D.N.Y. 2002) (deeming an affirmation a judicial document since it was used to sentence defendant).

Here, the Supplemental Affirmation was filed the very same day as the application for an Order to Show Cause (*see* ECF Nos. 6 and 7). The Supplemental Affirmation was filed in support of the Order to Show Cause. All of those submissions were filed in order to seek the TRO relief. It was unquestionably a document used and relied upon by the court and therefore "relevant to the performance of the judicial function and useful in the judicial process." *See Saadeh*, 2021 WL 965334, at *2. For these reasons, the Supplemental Affirmation is considered a "judicial document" regardless if the TRO motion is no longer extant and the case has since been dismissed.

Having found that the document in question is a judicial document, the next consideration is whether there is a presumption of access associated with the document and whether there are any countervailing concerns. *Lugosch*, 435 F.3d at 119.

### B. *Is the Presumption of Access Overcome by Countervailing Concerns*?

Judicial documents are presumptively subject to public inspection. However, "[d]eclarations are subject to a lesser—but still substantial—presumption of public access." *Correia,* 2020 U.S. Dist. LEXIS 211688 at *2. Here, the Supplemental Affirmation discusses the non-parties' alleged involvement in the fraud in the Complaint. (ECF No. 7.)

In *Zappin v. Cohen,* the Court encountered a similar issue as presented here. There, a *pro se* Plaintiff filed a complaint but failed to serve process upon the Defendant, so the action was dismissed under Fed. R. Civ. P. 4(m). Order on Sealing at 3, *Zappin v. Cohen,* No. 15-cv-7271 (S.D.N.Y. May 27, 2016), ECF No. 24. The complaint itself made derogatory, conclusory and scurrilous allegations against defendants and nonparties. *Id.* The *Zappin* court found that a complaint is ordinarily a judicial document but since the action was dismissed and therefore the complaint's contents played no role in the undersigned's judicial function, it was *not* a judicial document. *Id.* Even if the complaint was a judicial document, the privacy interest of the defendant outweighed the presumption of public access since the complaint made conclusory, unsupported allegations against defendant. *Id.* Therefore, the Court granted the motion to seal the Complaint. *Id.*

Like *Zappin,* the case here has since been dismissed just 5 days after the Complaint was filed. The public will therefore have little interest, if any, in viewing the Supplemental Affirmation. The dismissal was voluntary by Plaintiff. No application was made for dismissal, so the Court merely directed the case closed upon the filing of the "stipulation" (really notice) of dismissal under Rule 41(a).

The non-parties cite various legitimate reasons for sealing in light of their respective occupations. (ECF No. 15 at 2.) Mindful that "social embarrassment and concerns regarding

9

future employment" are "legally insufficient" reasons to seal a case even after is voluntarily dismissed, *see Nago v. Bloomberg L.P.*, No. 19-CV-11483 (GBD) (OTW), 2021 WL 1718949, at *2 (S.D.N.Y. Apr. 30, 2021), nevertheless in light of the scandalous accusations levelled, coupled with the lack of proof or evidence offered in opposition to the motion to seal to support such accusations, the Court concludes in the exercise of discretion that the requested documents warrant sealing. *See Amodeo*, 71 F.3d at 1050-51 (noting that courts have "the power to insure that their records are not used to gratify private spite or promote public scandal" and should heavily weigh the privacy interests of innocent third parties in their balancing equations); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017) (noting that courts should err on the side of non-disclosure of unverified information).

The movants only seek to seal the Supplemental Affirmation filed at ECF No. 7 and the motion to seal filings at ECF No. 15, 16 and 17. The remainder of the record, including the Complaint, remains *unsealed* and open for public viewing. This means that the public right to access these other documents is only minimally infringed, if at all. *Cf. Kim v. BTG Pactual Asset Mgmt. US, LLC,* No. 22-cv-3547 (RA), 2022 U.S. Dist. LEXIS 163246 (S.D.N.Y. Sept. 9, 2022) (denying motion to seal complaint since it would deny the public's access to matters that directly affected the case); *Cont'l Indemn. Co. v. Timothy Coffey Nursery/Landscape, Inc.*, No. 21-CV-0853 (JS) (JMW), 2022 U.S. Dist. LEXIS 26263 (E.D.N.Y. Feb. 14, 2022) (denying motion to seal *entire* case record).

Finally, the Court notes that the movants took swift action in filing his motion: exactly one week after Plaintiff docketed her Supplemental Affirmation and three days after the case was dismissed. This circumstance tips the scale in favor of sealing. *Cont'l Indem. Co.*, 2022 U.S. Dist. LEXIS 26263 at *12 (noting that defendants sought leave to seal the record an entire year

10

after the action began and that "[f]ailure to take prompt action in requesting that public documents be sealed may, alone, be a justifiable reason to deny a motion to seal") (citing *Rollag v. Cowen Inc*., No. 20-CV-5138 (RA), 2020 WL 4937462, at *3 (S.D.N.Y. Aug. 24, 2020)).

For these reasons, the Court finds that the movants' privacy interests clearly outweigh the public's presumption of access to these limited documents thus warranting the sealing of ECF Nos. 7, 15, 16 and 17.

## **CONCLUSION**

Based upon the foregoing, Underwood's motion to seal ECF Nos. 7, 15, 16 and 17 is granted. The Clerk of the Court is hereby directed to file those entries under seal.

Dated: Central Islip, New York
February 8, 2024

**S O  O R D E R E D:**

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge